## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**HARMON BROCK,**

        **Plaintiff,**

**vs.**                                   **CASE NO.: 1:06-CV-058-SPM**

**MICHAEL A. KIRK; MARTIN A.**
**WATERS; and WILLIAM V. KRAMER,**
**individuals,**

        **Defendants.**

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon the motions for summary

judgment filed by Zephyrhills Police Officer Michael Kirk (doc. 40) and

Hillsborough County Deputy Sheriffs Martin Waters and William Kramer (doc.

44); the responses thereto (docs. 45 and 49, respectively), and all associated

materials.  For efficiency's sake, both motions will be addressed in a single order.

PROCEDURAL HISTORY:

This case was originally filed in state court in January of 2004 as a four-

count complaint alleging I) negligence; II) false arrest; III) false imprisonment;

and IV) intentional infliction of emotional distress.  Counts II and III named

Zephyrhills Police Department, Robert Howell in his official capacity as

Zephyrhills Chief of Police, and Sammy Woodall in his official capacity as Dixie County Sheriff; Counts I and IV also named Bob White as a defendant in his official capacity as Pasco County Sheriff.  The trial court judge denied a motion to dismiss as to Counts I through III and granted the motion as to Count IV, dismissing it without prejudice.[1]  Plaintiff filed an amended complaint which added two counts: malicious prosecution and a §1983 claim.[2]  The complaint now containing a federal question, Defendants removed the case to federal court.

This Court dismissed the second amended complaint in part, leaving only 1) a negligence claim as it related to failure to dispense Plaintiff's medication and failure to treat Plaintiff in a humane manner; and 2) a §1983 claim.  The Court directed Plaintiff to provide a more definite statement regarding whether the §1983 claim applies to the officers in their official or individual capacity (doc. 17 at 11-12).

In response, Plaintiff filed a third amended complaint (doc. 22)[3] raising a malicious prosecution claim and a §1983 claim, and it is this complaint upon which the summary judgment motions are based.

---

[1]  Neither the motion nor the trial court's order is a part of this record.

[2]  Although the complaint is styled a "second amended" complaint, it appears that this is the first amendment made to the original complaint.

[3]  As with note 2, although the complaint is styled a "third amended" complaint, it appears that this is only the second amendment made to the original complaint.

## FACTS:[4]

The Court's synthesis of the facts results in the following timeline. On August 16, 2002, a man robbed the Sunshine State Federal Savings Bank in Zephyrhills, Florida.  Once Zephyrhills Police Officer Ailisa Boyd responded and secured the scene, she turned the case over to Detective Mike Kirk, who interviewed witnesses and obtained surveillance camera footage.  Witnesses described an older (in his sixties) white male weighing between 190-200 pounds with short brown or grey hair, wearing dark pants, a white shirt, glasses, and a cap.  After robbing the bank, the suspect left in a red Ford pickup truck with a license plate bearing digits 3593, A35-93E, or 835-83P.

In an attempt to identify the suspect, Kirk obtained photos taken from the surveillance camera, had them published in the local newspaper, and shared them with other law enforcement agencies.  One of those agencies was the Hillsborough County Sheriff's Office.  At the direction of his supervisor, Kirk met with Deputy Bill Kramer and showed him the surveillance photos.  Kramer remarked that it looked like an individual he knew (Plaintiff) nicknamed "Coon."  Kramer then took at least one of the photos overnight to get a second opinion. He took them to Martin Waters, who is Kramer's coworker and Plaintiff's son-in-law.  Waters, after also identifying the man in the photos as Coon, showed them to other family members, including Plaintiff's two adult children, his daughter-in-

---

[4] The facts are presented, as they must be, in the light most favorable to Plaintiff.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

law, and his ex-wife.  All agreed that they recognized the individual in the photograph as Plaintiff.

The next day, Waters returned the photos to Kramer and reported his findings, providing Plaintiff's full name and address for further investigation.  A photo lineup was then prepared and shown to the bank witnesses.  Mary Heisner was unable to identify anyone, Peggy Walker identified Plaintiff as the robber, and a third witness, Sandra Thompson, also identified Plaintiff.

Based on this information, as well as a report received from the Department of Motor Vehicles showing that Plaintiff owned both a maroon and a red Ford pickup truck, a probable cause affidavit for Plaintiff's arrest was prepared.  Once the warrant was signed, Kirk and another officer executed the warrant at Plaintiff's residence and transported Plaintiff to the Dixie County Jail, from which he was released nineteen days later.

In April of 2003, the FBI contacted Zephyrhills Police Department to report that a man named Roger Milo Hart had confessed to the robbery.  After confirming the man's story and gathering more information, Officer Boyd (who had initially responded to the scene) prepared another photo lineup containing Hart's picture and showed it to the same witnesses.  This time, Walker and Heisner identified Hart as the suspect, and Thompson could not make any positive identifications.

Plaintiff alleges 1) that Defendants maliciously prosecuted him without

probable cause and 2) that Defendants deprived Plaintiff of his civil rights under
42 U.S.C. § 1983.

**I.      Malicious Prosecution Under § 1983 and Florida Law**

> **A.    Qualified Immunity**

Plaintiff alleges that all three defendants maliciously instituted criminal
proceedings against Plaintiff in spite of a lack of probable cause for the arrest.
As law enforcement officers employed by the City of Zephyrhills and Hillsborough
County, Defendants are entitled to qualified immunity if they can show that they
were "performing a 'discretionary function' at the time the alleged violation
occurred."  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir.
2004)(*quoting* Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64
(11th Cir. 2004)).  The burden then shifts to Plaintiff to prove "(1) that the
defendant has committed a constitutional violation and (2) that the constitutional
right the defendant violated was "clearly established" at the time he did it."  Id.
(*citing* Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264).

Discretionary function in the qualified immunity context, at least in the
Eleventh Circuit, does not utilize the traditional "discretionary/ministerial"
dichotomy.  Holloman, 370 F.3d at 1255.  Instead, the court must ask whether
the actions "are of a type that f[a]ll within the employee's job responsibilities."  Id.
In making this determination, a two-prong test is used.  The court must consider

whether the government employee was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  Id. at 1266 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)).  It is the "general nature" of the action that must be examined, "temporarily putting aside that it may have been committed [unconstitutionally]."  Id.

In order to meet the first prong, Holloman states that "the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description."  Id. (emphasis original). In their positions as law enforcement officers with Hillsborough County and the City of Zephyrhills, there is no question that the duties of Kirk, Waters, and Kramer included obtaining and executing search warrants, investigating cases, and referring cases to the SAO.  Indeed, they might likely be found remiss in their duties if they did not perform these functions.

As to the second prong, the Holloman court stated, "Each government employee is given only a certain 'arsenal' of powers with which to accomplish her goals."  Id. at 1267.  Pursuing those goals via means outside the "range of discretion" is not protected by qualified immunity.  Id.  For instance, a teacher could not enroll her students in the military to promote patriotism; neither could she compel her students to bring their property to school and redistribute it to demonstrate altruism.  Id.  However, a teacher may chastise a student or report

him to the principal to keep order in her classroom.  Id.

In this case, Kirk was fulfilling a legitimate job-related function in investigating the case, providing evidence to the SAO, and obtaining and executing a search warrant.  He followed the direction of his supervisor to seek assistance from other agencies, which led him to Waters and Kramer.  As deputies, Waters and Kramer were duty-bound to alert Kirk to any information they possessed which would further the progress of the case, including their opinion (and that of others) that the man in the photo looked like Plaintiff.

There is no evidence that Kirk engaged in any misconduct during the course of his investigation.  He did not perjure himself on the probable cause affidavit, Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir.1994),[5] or arrest Plaintiff without a warrant.  Lepone-Dempsey v. Carroll County Com'rs, 159 Fed. Appx. 916 (11th Cir. 2005).

Although Plaintiff alleges malice on the part of all Defendants, it is not present on this record.  The available facts show that Plaintiff did not know Kirk or any other Zephyrhills police officers before his arrest.  He got along well with Waters and Kramer, and in fact had planned to utilize them as character witnesses in the hopes of being released from jail.

---

[5]  The Court acknowledges Plaintiff's contention that Kirk failed to include certain information on the affidavit, such as the fact that Heisner was unable to positively identify anyone in the photo lineup or that the markings and license plate on the getaway vehicle did not match Plaintiff's vehicle.  See doc. 45 at 6.  In any case, the Court finds that the omitted information would not have prevented the issuance of the warrant.  See, e.g., United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir.1990).

Once Kramer recognized the individual in the photos as someone he knew, he sought a second opinion from someone who surely would be able to confirm or deny Kramer's suspicion—Plaintiff's own son-in-law, Waters.  After seeing the photos, Waters showed them to other family members, all of whom were positive that Plaintiff was the man shown therein.

Plaintiff's insistence on the existence of some sort of conspiracy by the officers to fabricate evidence in order to land Plaintiff in jail is just not borne out by the record.  There is simply nothing on these facts which would show that Friend performed his official duties "for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  Holloman, 370 F.3d at 1266.  Kirk, Waters and Kramer are protected from Plaintiff's claims by qualified immunity.

### B.    Malicious Prosecution

Even assuming a lack of qualified immunity, Plaintiff still has not made a prima facie case of malicious prosecution.  A malicious prosecution claim under § 1983 includes the following elements: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003)(citing Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir.1998)).  These elements are essentially the same as those required under Florida law to make out a state

claim of malicious prosecution.  *E.g.*, Endacott v. Int'l Hospitality, Inc., 910 So. 2d 915, 920 (Fla. 3d DCA 2005); Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002).  Thus, both counts are analyzed under a single heading.

Defendants argue that they did not cause the continuation of Plaintiff's prosecution and that arguable probable cause existed.  First, the decision whether to initiate or continue a criminal prosecution lays solely within the discretion of the Office of the State Attorney, the arm of the government representing the public interest.  State v. Gonzalez, 695 So. 2d 1290, 1292 (Fla. 2d DCA 1997)(*citing* State v. Brown, 416 So. 2d 1258, 1259 (Fla. 4th DCA 1982); Wilson v. Renfroe, 91 So. 2d 857, 859 (Fla. 1956)).  None of the officers had any no control over whether the prosecution would be continued or dropped, and they cannot be held liable for causing the continuation of Plaintiff's prosecution.

Second, Plaintiff argues that Defendants are unable to show the existence of probable cause during any stage of the proceeding.  It is crucial to note that "*[a]rguable* probable cause, not the higher standard of *actual* probable cause, governs the qualified immunity inquiry."  Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999)(citations omitted, emphasis added).  Arguable probable cause exists when "an objectively reasonable officer in the same circumstances and possessing the same knowledge as [the defendant officer] could have believed that probable cause existed . . . ."  Paullin v. City of Loxley, 171 Fed. Appx. 773, 777 (11th Cir. 2006).

In making this determination, a court must look to the information known to the officer <u>at the time</u> of his conduct, not facts that are known either to the plaintiff at that time or to a court later.  <u>Jones</u>, 174 F.3d at 1283 n.4.  Viewing the information known to the officers at the time, the Court finds that arguable probable cause existed when Kirk arrested Plaintiff.  The physical descriptions given by the witnesses matched Plaintiff, including the color and make of the getaway vehicle.  Two of the three witnesses to the robbery (Walker and Thompson) identified Plaintiff in the initial photo lineup.  Additionally, when shown the surveillance photos, members of Plaintiff's own family believed it was Plaintiff.

An objective officer in the same circumstances would have believed that probable cause existed for the issuance of an arrest warrant.  It was not until approximately eight months later that Roger Milo Hart contacted the FBI and confessed to the robbery.[6]  The FBI contacted Boyd, as the initial responding officer, to advise her of this development.  Upon learning this information, Boyd prepared a new photo lineup containing Hart's photo.  When she returned to the bank and showed the lineup to the witnesses, Walker and Heisner positively identified Hart.  None of the original officers–Kirk, Waters or Kramer–was involved in pursuing this new information.

Viewing the available evidence in the light most favorable to Plaintiff, it

---

[6]  It is important to note that Plaintiff was not in custody during the intervening eight months; he was released from jail 19 days after his arrest.

cannot be said that the officers either "knew or . . . should have known that the action [they] took . . . would violate [Plaintiff's] constitutional rights . . . , or [that] he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."  Wood v. Strickland, 420 U.S. 308, 322 (1975).  Summary judgment must be granted on Count I.

**II.    42 U.S.C. § 1983**

Plaintiff's §1983 claim also includes an allegation that he was "tricked" into "conditionally consenting" to a search of his house (doc. 22 at 7, ¶59).  The complaint goes on to state that "Plaintiff . . . gave a conditional consent, which was intentionally violated by Detective Kirk and another police officer for the sole purpose of gaining entrance into [Plaintiff's] home.  Further, the police officers unlawfully gained entrance to Plaintiff's vehicle without a proper search warrant."

Nowhere in the complaint or in his responses to the summary judgment motions does Plaintiff provide additional details about this allegation.  There is no mention of what the "trick" was, what the conditional consent consisted of, what the violation was and why it was intentional, or how the officers entered Plaintiff's vehicle and why it was unlawful.  The only information that can be gleaned comes from the information contained in Plaintiff's deposition, the police report narrative and Kirk's affidavit.  Plaintiff claims in his deposition that he gave consent to search his house on the conditions that 1) Kirk not be on the premises at the time, and 2) Plaintiff's friend Manuel Folsom was to accompany the

officer(s) conducting the search (*see* doc. 44, exh #7 at 7-8).

Kirk notes in his affidavit that he saw Plaintiff, through a window in the interview room at the jail, sign what Kirk believed to be a consent-to-search form.[7] He was told by his superior officer, Sergeant Larry Davidson, that Plaintiff had in fact signed the form and given permission to search his house and vehicles, and Kirk had no reason to believe otherwise. When Kirk and Davidson arrived at Plaintiff's residence, Davidson directed Kirk to use a slim jim tool to open the door of one of Plaintiff's trucks, which contained keys to Plaintiff's residence. The officers then entered the house and executed the remainder of the search.

Even assuming these facts to be true, Kirk is still protected by qualified immunity because he was performing a discretionary function. The same analysis applied *supra* to the malicious prosecution claim applies here as well. Execution of searches in the course of investigating a claim is well within the job responsibilities of a police officer. It was reasonable for Kirk to rely on his superior officer's representation that Plaintiff had consented to a search of his home and vehicles. Kirk had witnessed nothing during Davidson's interaction with Plaintiff that should have aroused his suspicions in any manner, and Kirk had no way of knowing that Plaintiff had placed conditions on his consent.

Similarly, Kirk reasonably followed Davidson's instruction to use a slim jim

---

[7] According to counsel for defendant Kirk, the consent form cannot be located; thus, it is impossible to tell with certainty whether any conditions were placed on the search and reduced to writing.

to gain entry into Plaintiff's vehicle, having been told that Plaintiff consented to searches of his house and vehicles.  As with the malicious prosecution claim, it cannot be said that Kirk "knew or . . . should have known that the action [he] took . . . would violate [Plaintiff's] constitutional rights . . . , or [that] he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."  <u>Wood</u>, 420 U.S. at 322.  Summary judgment must be granted as to Count II.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1.    Defendants' motions for summary judgment (docs. 40 and 44) are hereby *granted*.

2.    Summary judgment shall be entered on all counts in favor of Defendants.

3.    The motion to strike expert witness (doc. 48) is *denied* as moot.

4.    The motion to compel (doc. 34) is *denied* as moot.

**DONE AND ORDERED** this <u>thirteenth</u> day of November, 2006.

*s/ Stephan P. Mickle*

Stephan P. Mickle
United States District Judge